UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

              v.

**GILBERTO ALDANA-BARRERA**,

              Defendant.

**GOVERNMENT'S TRIAL MEMORANDUM**

Case No. 07-CR-275 (TJM)

      The United States of America, by its undersigned attorney, respectfully submits its trial memorandum.

Dated: November 1, 2007

              Respectfully submitted,

              GLENN T. SUDDABY
              UNITED STATES ATTORNEY

BY:

              EDWARD P. GROGAN
              ASSISTANT U.S. ATTORNEY

## I.  STATEMENT OF THE CASE

    A.    Trial is scheduled to commence at 9:30 a.m. on Tuesday November 13, 2007, in Albany, New York, before Senior United States District Judge Thomas J. McAvoy.

    B.    The defendant, GILBERTO ALDANA-BARRERA, is currently detained .

    C.    Jury has not been waived.

    D.    The United States estimates the duration of the trial to be two (2) days.

    E.    The Indictment charges defendant in (2) counts as follows:

| Count | Description |
|---|---|
| 1 | High Speed Flight from Immigration Checkpoint, in violation of Title 18 United States Code Section 758. |
| 2 | Entry without Inspection, in violation of Title 8, United States Code Section 1325(a)(1) (B Misdemeanor). |

## II.  STATEMENT OF THE FACTS

The evidence at trial will establish that at approximately 9 p.m. on Saturday June 2, 2007 a blue Jeep Liberty was observed entering Canada without inspection in the vicinity of the Line Road. RCMP Constable Bernard Vandal attempted to execute a vehicle stop but the Jeep fled at a high rate of speed. Constable Vandal pursued the Jeep Liberty and noted that the license plate was Virginia KEB 6962. Constable Vandal pursued the Jeep Liberty on several roads in Quebec. Vandal reports that the Liberty Driver drove in a reckless manner throughout the pursuit and drove through stop signs, red lights and other traffic control devices at a high rate of speed. During the pursuit the Jeep Liberty struck another RCMP vehicle that was assisting Vandal in the

pursuit. Vandal pursued the Jeep Liberty over several roads until they reached Highway 221 which si north south. The Jeep Liberty turned onto Highway 221 south towards the United States border all the while being pursued by RCMP. Constable Vandal chased the Jeep Liberty and watched as it crossed the border at a high rate of speed without stopping. Constable Vandal and the other RCMP officers all stopped at the Overton Corners POE and related what had happened to the United States CBP officers at the Port. Specifically, Vandal provided the vehicle make, model and license plate number to the CBP officers.

     CBP officer James Castine was passed by the Jeep L:iberty on Highway 221 just north of the POE. Officer Castine was off duty and was returning to the United States driving south on Highway 221 after visiting a friend in Canada. Castine observed a Jeep Liberty, dark in color with plates that were not Quebec, approach him from behind and then pass him at a very high rate of speed at approximately 9 p.m. on June 2, 2007. Castine then observed two Canadian law enforcement vehicles which were following the Jeep Liberty as they also passed him at a high rate of speed.

     CBP Officers Bernard and Wesling were on duty at the Overton Corners POE on the evening of June 2, 2007. They were responsible for conducting immigration and customs inspections for all people seeking to enter the United States at that Port of Entry. Shortly after 9 p.m. they both observed three vehicles approach the United States from Canada on Highway 221 via the port camera. Bernard and Wesling responded to the vehicle driving towards the Port by exiting the building but as they did so they were only able to observe an SUV type vehicle drive past them without stopping at a high rate of speed. The driver of the vehicle ignored signs that direct all travelers to report for inspection and drove past at least one stop sign. Constable Vandal

and the other RCMP officers stopped and told Bernard and Wesling what had happened.  Vandal reported the fact that the vehicle pates were from Virginia and that the plate number was KEB 6962.  Officer Wesling called both Border Patrol and the New York State Police to report the vehicle make model and plate number and the fact that it had driven through the POE without stopping.  Border Patrol Agent John Dustman responded to the scene and searched the immediate area looking for the Jeep Liberty but he did not find it.

     Later, at approximately 11:30 p.m., a vehicle matching the description that had been broadcast as a result of the event at Overton Corners was observed in the town of Swanton Vermont by Border Patrol Agent Ian Pope.  Pope executed a U-Turn in the Town of Swanton and saw that the vehicle he observed had accelerated at a high speed.  Pope gave chase.  The Jeep liberty fled at a high rate of speed on a local road.  The Jeep Liberty drove into a small residential neighborhood.  Pope lost sight of it for approximately 30 seconds but found it again and pursued it.  Eventually Pope caught up with the vehicle and verified that it was the same make model and plate number as the one reported to have run the Overton Corners POE.  Pope executed a vehicle stop and the Jeep Liberty pulled over and stopped.  Pope found that the driver the of the Jeep Liberty was the defendant, Gilberto Aldana-Barrera, a citizen of Colombia, unlawfully present in the United States.  BP Agent Terry Kellison arrived in support of Pope and Kellison transported the defendant to the Swanton Border Patrol Station.  Pope transported the Jeep Liberty to the Border Patrol Station.  The Jeep Liberty is registered to Avis Rental Cars and was rented to a person named Gilberto Aldana in Middletown, New York on June 2, 2007.  The person who rented the Jeep Liberty presented a Florida Drivers License in the name Gilberto Aldana.

     Border Patrol Agent Terry Kellison interviewed defendant in Spanish after advising him

of his Miranda rights. Defendant waived his right to remain silent and his right to an attorney and stated that he last entered the United States on June 2, 2007 but he did not know where he was going. Defendant stated that he tried to sneak into Canada and that he used a map which indicated unguarded crossing location sin Vermont to cross into Canada. Defendant told Kellison that he wanted to claim refugee status in Canada and did not do the same in the United States because he was afraid of being deported.

Gilberto Aldana-Barrera provided biographical information to Agents Pope and Kellison following his arrest. He stated that his name was GILBERTO ALDANA-BARRERA and that he was a citizen of Columbia born in Columbia. Gilberto Aldana-Barrera todl Agent Pope that he entered the United States on June 2, 2007 and that the last time he had entered prior to that date was approximately 6 years previously and that he had entered by walking across the border between the United States and Mexico.

## III.  RELEVANT LAW

A.  <u>Elements of Section 758 Offense</u>

Defendant is charged in Count One with violating Title 18, United States Code, Section 758, which makes it a crime to flee or evade a checkpoint operated by the Immigration and Naturalizaiton Service.

In order for Defendant to be found guilty of the count, the government must prove the following elements:

Count 1, 18 U.S.C. Section 758:

1) On or about the date specified, the defendant fled or evaded a checkpoint operated by the Immigration and Naturalization Service[1], or any other Federal law enforcement agency;

2) in a motor vehicle, and

3) Flees Federal, State, or local law enforcement agents,

4) In excess of the legal speed limit

See 18 U.S.C. § 758.

B. Elements of Section 1325(a)(1) Offense

Defendant is charged in Count Two with violating Title 8, United States Code, Section 1325(a)(2), which makes it a crime for an alien to enter the United States without inspection.

In order for Defendant to be found guilty of the count, the government must prove the following elements:

Count 2, 8 U.S.C. Section 1325(a)(2)

1) That the defendant is an alien,

2) That the defendant eluded examination and inspection by United States immigration officers.

See, 8 U.S.C. Section 1325(a)(2)

The government need not prove the specific nationality of an alien defendant, so long as the evidence is sufficient to establish the element of the defendant's alienage. United States v. Hernandez, 913 F.2d 568 (8th Cir. 1990).

An alien is any person who is not a natural-born, naturalized citizen, or national of the United States. The term "national of the United States" includes not only a citizen, but also a

---

[1] Immigration and Naturalization Service (INS) no longer exists. INS functions are the responsibility of the Department of Homeland Security. Title 8 United States Code Section 1551.

person who, though not a citizen of the United States, owes permanent allegiance to the United States.  American citizenship may be acquired only by birth, by naturalization, or by special act of Congress.  Persons who are not citizens of the United States may acquire citizenship only through naturalization proceedings. Title 8 U.S.C. § 1101(a)(3) .